UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| PRIEST EUGENE PRYOR, | ) | |
|---|---|---|
| | ) | |
| Petitioner, | ) | 04 C 6490 |
| | ) | |
| v. | ) | |
| | ) | Honorable Charles R. Norgle |
| NEDRA CHANDLER, | ) | |
| | ) | |
| Respondent. | ) | |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Before the court is Petitioner Priest Eugene Pryor's Petition for Writ of Habeas Corpus – Person in State Custody, filed pursuant to 28 U.S.C. § 2254. For the following reasons, the Petition is denied.

## I. BACKGROUND

### A. Facts

Petitioner Priest Eugene Pryor ("Pryor") is incarcerated at the Dixon Correctional Center in Dixon, Illinois, where he is in the custody of Respondent Nedra Chandler, the Warden of that facility. On April 30, 1999, the Illinois Appellate Court affirmed Pryor's conviction and forty-seven year sentence for first-degree murder. As part of its decision to affirm, the Appellate Court summarized the facts as developed at Pryor's jury trial in the Circuit Court of Kane County. The following facts must therefore be presumed to be correct for the purposes of this court's habeas review. See 28 U.S.C. § 2254(e)(1).

1

On the night of October 27, 1994, Pryor was riding in a car with three other people on East New York Street in Aurora, Illinois. Pryor, a member of the Gangster Disciples street gang, observed other members of the Gangster Disciples on foot. These individuals motioned for Pryor's car to stop, and the driver complied. Pryor exited the car and observed a group of Gangster Disciples attacking Armando Mendez ("Mendez").

According to the testimony of Gangster Disciples and codefendants Darryl Bailey and Kevin Scott, several Gangster Disciples had observed Mendez standing on a nearby street corner during the evening in question. Bailey, Scott and other Gangster Disciples suspected Mendez was a member of the Latin Kings, a rival gang. One of the Gangster Disciples, Patrick Kirkwood, asked Mendez if he was a "King," and instructed Mendez that if he was not, he should "throw down the crown," i.e. invert the Latin King hand sign in disrespect. Mendez apparently refused to do so, and Kirkwood punched him in the face. Mendez then attempted to flee towards a nearby gas station. Several Gangster Disciples chased and caught Mendez, and began to beat him. Pryor participated in the attack, punching Mendez, kicking him, striking him with his elbow, and throwing him to the ground. Mendez was also struck several times with a metal garbage can. Another Gangster Disciple, Lamar Joyner, then shot Mendez in the back of the head, killing him. Two witnesses testified that Joyner obtained the murder weapon from Pryor's car. Other witnesses testified that Joyner arrived on the scene with the weapon already in his possession.

## B. Procedural History

On November 15, 1994, Pryor was indicted on seven counts of first-degree murder. A jury trial was held in the Circuit Court of Kane County during late January and early February

1997. Various witnesses testified to the events of the evening of October 27, 1994. During its closing argument, the State asserted that Mendez's death occurred as a result of the Gangster Disciples "protecting their territory." The State argued that Pryor and other members of the Gangster Disciples joined together to beat and kill Mendez. The jury's verdict was guilty on all seven counts. The court sentenced Pryor to forty-seven years imprisonment.

The Illinois Appellate Court affirmed in an unpublished opinion issued on April 30, 1999. On October 6, 1999, the Illinois Supreme Court denied leave to appeal. Pryor then filed a petition for post-conviction relief. The Circuit Court denied this petition on August 7, 2002. The Illinois Appellate Court affirmed on October 3, 2003. On January 28, 2004, the Illinois Supreme Court denied leave to appeal.

Pryor filed the instant § 2254 Motion in the Northern District of Illinois on September 27, 2004. The Motion is fully briefed and before the court.

## II. DISCUSSION

### A. Standard of Decision

Pryor's Petition is governed by 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which sets a high hurdle for habeas relief. The statute states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court's decision is *contrary to* clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [it]." Owens v. Frank, 394 F.3d 490, 496 (7th Cir. 2005) (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)). A state court's decision is an *unreasonable application* of clearly established Supreme Court law if the state court "identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular prisoner's case" or "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams, 529 U.S. at 407; see also Owens, 394 F.3d at 496. In order for a state court decision to be considered "unreasonable" under this standard it must be more than incorrect, it must lie "well outside the boundaries of permissible differences of opinion." Hardaway v. Young, 302 F.3d 757, 762 (7th Cir. 2002); see also Schultz v. Page, 313 F.3d 1010, 1015 (7th Cir. 2002) ("The state court decision is reasonable if it is minimally consistent with the facts and circumstances of the case").

Before reviewing the Illinois courts' decisions, however, the court must determine whether Pryor fairly presented his federal claims to the state courts. Section 2254 requires a habeas petitioner to exhaust the remedies available in state court prior to pursuing federal habeas relief. See 28 U.S.C. § 2254(b)(1)(A). Any claim not presented to the state's highest court is deemed procedurally defaulted. See O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999) (indicating that "a petition for discretionary review in Illinois' Supreme Court is a normal, simple, and established part of the State's appellate review process").

4

In addition to exhausting the remedies available in state court, a habeas petitioner is procedurally barred from raising claims in a federal habeas court that he did not raise in the state court proceedings. See O'Sullivan, 526 U.S. at 848 (holding that a petitioner's failure to present three claims to the Illinois Supreme Court for discretionary review resulted in a procedural default of those claims). Fair presentment of a constitutional claim requires a habeas petitioner to present both the operative facts and the controlling legal principles to the state court before bringing the claims to a federal habeas court. Cf. Rodriguez v. Scillia, 193 F.3d 913, 916 (7th Cir. 1999) (discussing exhaustion of claim) (citing Picard v. Connor, 404 U.S. 270, 277 (1971)). Thus, a habeas petitioner procedurally defaults, or waives, any claim raised for the first time in federal court.

Also, federal habeas courts cannot review claims that the state court has disposed of on state law grounds. See Stewart v. Smith, 536 U.S. 846, 860 (2002); see also Lambrix v. Singletary, 520 U.S. 518, 523-24 (1997) (noting that where "the state law determination is sufficient to sustain the decree, any opinion . . . on the federal question would be purely advisory.") (citing Herb v. Pitcairn, 324 U.S. 117, 125-26 (1945)). Put another way, federal habeas relief is not available if the state court decision rests on state law that "is independent of the federal question and adequate to support the judgment." See Coleman v. Thompson, 501 U.S. 722, 729 (1991).

A federal court may not grant habeas relief on a defaulted claim unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. See Edwards v. Carpenter, 529 U.S. 446, 450-52 (2000); Coleman, 501

U.S. at 750; Anderson v. Cowen, 227 F.3d 893, 899 (7th Cir. 2000). With the above principles in mind, the court examines Pryor's Petition.

## B. Pryor's Claims for Relief under 28 U.S.C. § 2254

Respondent concedes that Pryor has exhausted his state court remedies. Pryor asserts the following grounds for federal habeas corpus relief: (1) the State failed to prove beyond a reasonable doubt that he aided and abetted the offender, (2) he was denied a fair trial because of the systematic exclusion of African-Americans from the jury pool, (3) he was denied his 5th, 6th, and 14th Amendment rights because of the State's unreasonable application of state laws contrary to federal laws, (4) his attorney was ineffective during the appeal of his post-conviction proceeding, and (5) his sentence violated the rule laid down in Apprendi v. New Jersey, 530 U.S. 466 (2000).

### *1. Insufficient Evidence to Convict*

Once an individual has been convicted of a crime, and that conviction has been affirmed on direct appeal, federal courts are instructed to use the following well-established standard of review when examining the sufficiency of the evidence. If the "record evidence could reasonably support a finding of guilt beyond a reasonable doubt," the conviction should not be overturned. Jackson v. Virginia, 443 U.S. 307, 318 (1979). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319; see also Ford v. Ahitow, 104 F.3d 926, 936-37 (7th Cir. 1997).

In this case, there is no question that a rational trier of fact could have found Pryor guilty beyond a reasonable doubt. At trial, it was undisputed that Pryor did not kill Mendez; Joyner

fired the fatal shot. However, the State presented the following facts demonstrating Pryor's criminal culpability. Pryor and several other Gangster Disciples beat Mendez because they thought he was a member of a rival gang. Joyner was a Gangster Disciple. Two witnesses testified that Joyner was involved in the beating. These witnesses also testified that Joyner walked away from the scene of the beating, retrieved the murder weapon from Pryor's car, immediately returned, and shot Mendez in the head. (As the court has noted, there was conflicting testimony as to whether Joyner retrieved the gun from Pryor's car.) Pryor's contention that this evidence could not reasonably support a finding of guilt beyond a reasonable doubt is meritless. See Jackson, 443 U.S. at 318-19. His first claim for relief under § 2254 therefore fails.

### 2. *Systematic Exclusion of African-Americans from the Jury Pool*

Pryor, an African-American, asserts that African-Americans were systematically excluded from the jury pool in violation of his Sixth Amendment rights. There is no question that the Constitution requires juries to be selected from a "fair cross section of the community." Taylor v. Louisiana, 419 U.S. 522, 530 (1975). This requirement is "fundamental to the jury trial guaranteed by the Sixth Amendment." Id. The exclusion of minority groups such as African-Americans from a jury pool raises "at least the possibility that the composition of juries would be arbitrarily skewed in such a way as to deny criminal defendants the benefit of the common sense judgment of the community." Lochhart v. McCree, 476 U.S. 162, 175 (1986).

> In order to establish a prima facie violation of the fair cross section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

Duren v. Missouri, 439 U.S. 357, 364 (1979); see also United States v. Raszkiewicz, 169 F.3d 459, 463 (7th Cir. 1999).

Respondent concedes that African-Americans are a "distinctive group." However, Pryor has not provided the court with any information that would indicate African-Americans were underrepresented in Kane County venires, or that any such underrepresentation was the result of the "systematic" exclusion of African-Americans from the jury selection process. See Duren, 439 U.S. at 364. Pryor's second claim for relief under § 2254 therefore fails.

### 3. *The State's Application of State Laws in Contravention of Federal Laws*

Pryor asserts that the State unreasonably applied state law in contravention of federal law. However, he fails to identify which state laws the State allegedly applied unreasonably. He also fails to explain why the State's application of these laws was unreasonable. Finally, he fails to identify which federal laws the State allegedly contravened. "The lack of development of this argument and absence of supporting case law speaks to the paucity of the argument. Arguments that are not adequately developed or supported are waived." United States v. Jones, 224 F.3d 621, 626 (7th Cir. 2000) (internal quotation marks and citation omitted). Pryor's third claim for relief under § 2254 therefore fails.

### 4. *Ineffective Assistance of Counsel on Collateral Attack*

During the appeal of Pryor's post-conviction petition, his appointed counsel filed a motion to withdraw, asserting that there were no reasonable grounds on which to base an appeal. See Pennsylvania v. Finley, 481 U.S. 551 (1987); Wilkinson v. Cowan, 231 F.3d 347, 351 (7th Cir. 2000) ("[A]ny motion to withdraw pursuant to Finley or Anders v. California, 386 U.S. 738

(1967) necessarily implicates the merits of an appeal, because the premise of the motion is that the appeal is frivolous."). The Appellate Court granted the motion to withdraw, and affirmed the trial court. Pryor now argues that counsel was ineffective for filing this motion to withdraw.

Such a claim, however, is not cognizable in a federal habeas corpus proceeding. 28 U.S.C. § 2254(i) ("ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); see also Johnson v. McBride, 381 F.3d 587, 590 (7th Cir. 2004) ("Once trial and direct appeals have run their course, neither the sixth amendment nor federal law guarantees effective assistance of counsel for collateral proceedings."). Pryor's fourth claim for relief under § 2254 therefore fails.

### 5. *Apprendi* Claim

Finally, Pryor asserts that his sentence violates the rule laid down by the Supreme Court in Apprendi v. New Jersey: "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490 (2000); see also Blakely v. Washington, 542 U.S. 296, 301 (2004); United States v. Booker, 543 U.S. 220, 244 (2005). The Seventh Circuit has held that Apprendi "does not disturb sentences that became final before June 26, 2000, the date of its release." United States v. Curtis, 294 F.3d 841, 844 (7th Cir. 2002); see also Lambert v. McBride, 365 F.3d 557, 562 (7th Cir. 2004). The Seventh Circuit has also held that Booker "does not apply retroactively to criminal cases that became final before its release on January 12, 2005." McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005); see also United States v. Paladino, 401 F.3d 471, 481 (7th Cir. 2005).

Pryor's sentence became final on January 4, 2000, which is the last day he could have filed a petition for writ of certiorari in the United States Supreme Court following the Illinois Supreme Court's October 6, 1999 denial of his petition for leave to appeal. See SUP. CT. R. 13(1). Pryor's Apprendi claim is therefore barred under the time constraints explained in Curtis, 294 F.3d at 844 and McReynolds, 397 F.3d at 481. Pryor's fifth and final claim for relief under § 2254 therefore fails.

### III. CONCLUSION

For the foregoing reasons, Pryor's Petition for Writ of Habeas Corpus – Person in State Custody is denied.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

Dated: May 25, 2007